UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREDERICK G. BROWN and DIANA BROWN,

               Plaintiffs,

v.

AMCHEM PRODUCTS, INC., et al.,

               Defendants.

**ORDER**

19 Civ. 5844 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Defendant Cleaver-Brooks, Inc. removed this asbestos liability action from New York state court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). At the time of removal, the case had been pending in state court for approximately two years. For the reasons stated below, this Court concludes that removal was untimely under 28 U.S.C. § 1446(b)(3). Accordingly, this case will be remanded to state court.

## BACKGROUND

      On July 7, 2017, Frederick Brown and his wife Diana Brown filed a lawsuit against Cleaver-Brooks, Inc. and twenty-seven other defendants in Supreme Court of the State of New York, New York County. (Notice of Removal (Dkt. No. 2) ¶ 1; Cmplt. (Dkt. No. 2-1); Pltf. Interrog. Resp. (Dkt. No. 12-3) at 4)[1] Cleaver-Brooks was served with the Complaint on July 26, 2017, and with an Amended Complaint on October 6, 2017. (Notice of Removal (Dkt. No. 2) ¶¶ 2-3) Plaintiffs assert, <u>inter alia</u>, products liability and negligence claims for injuries that Mr. Brown allegedly suffered from exposure to Defendants' asbestos-containing products. (Pltf.

---

[1] Citations to page numbers of docketed materials correspond to the pagination generated by this District's Electronic Case Files ("ECF") system.

Br. (Dkt. No. 12) at 5; Def. Opp. (Dkt. No. 17) ¶ 4) Neither the Complaint nor the Amended Complaint names any specific Cleaver-Brooks product to which Mr. Brown was exposed. (Notice of Removal (Dkt. No. 2) ¶ 4) Cleaver-Brooks filed an answer, and discovery ensued.[2] (Id. ¶¶ 5-6)

On October 19, 2017, Plaintiffs served Cleaver-Brooks with responses to interrogatories (Notice of Removal (Dkt. No. 2) ¶ 6) stating that Mr. Brown had been exposed to asbestos as a sheet metal worker in the Brooklyn Navy Yard, where he worked on the U.S.S. Constellation and other ships. Mr. Brown summarized his exposure to asbestos during this period as follows:

> I was exposed to asbestos throughout my time as a sheet metal worker from 1954-1955 and from 1958 through 1962. . . .
>
> During my time as a sheet metal worker . . . , I spent approximately more than one full year at the Brooklyn Navy Yards. While at the Brooklyn Navy Yards I worked as a civilian aboard the U.S.S. Constellation for approximately 6 months as well as other ships and destroyers in dry dock there.
>
> While performing my sheet metal duties, I was exposed to asbestos from the work I did as well as from the work of tradesmen around and in close proximity to me who were cleaning, maintaining, removing and installing asbestos insulation on boilers, pumps, valves, pump motors, generators, pipes, pipe covering, turbines, compressors, distilling plants, refrigerating units and blowers on the U.S.S. Constellation, as well as other ships dry docked at the Brooklyn Navy Yards.

(Pltf. Interrog. Resp. (Dkt. No. 12-3) at 12) In an exhibit annexed to Plaintiffs' interrogatory responses, Plaintiffs state that Mr. Brown worked in the Brooklyn Navy Yards and aboard the U.S.S. Constellation around "1959 - 1961/1962." (Id. at 28)

In the interrogatory responses, Mr. Brown also states that he worked as a sheet metal worker "at numerous residential and commercial sites throughout New York

---

[2] Cleaver-Brooks answered on August 24, 2017, before the Amended Complaint was served. There is no indication in the record that an amended answer was filed. (Notice of Removal (Dkt. No. 2) ¶ 5)

City" from "1954 to 1955 and again from 1958 - 1962." (Id. at 12) "While present at these numerous residential and commercial sites, [Mr. Brown] was exposed to . . . asbestos insulation on . . . boilers, pumps, valves, pump motors, generators, pipes, pipe covering and blowers." (Id. at 12-13)

Throughout his career, Mr. Brown was "exposed to asbestos products and equipment that contained asbestos, made and sold by a large number of companies." Mr. Brown could not "possibly remember all of them." (Id. at 13) However, Mr. Brown "specifically recall[ed] being exposed to asbestos-containing products" of certain Defendants, including boilers manufactured by Cleaver-Brooks. (Id. at 14)

Mr. Brown's deposition was taken from December 19 to December 21, 2017. (Notice of Removal (Dkt. No. 2) ¶ 9) Counsel for Cleaver-Brooks appeared for the deposition, but did not ask any questions. (Pltf. Br. (Dkt. No. 12) at 5) At his deposition, Mr. Brown testified that he had spent about one year working on the U.S.S. Constellation as a sheet metal mechanic in about 1960. (Brown Dep. Tr. (Dkt. No. 1-5) at 78:20-22, 79:8-11, 91:25-92:18, 95:15-24) Mr. Brown did not testify specifically about any Cleaver-Brooks products or his exposure to them. (Pltf. Br. (Dkt. No. 12) at 5; Notice of Removal (Dkt. No. 2) ¶ 10; May 22, 2019 email (Dkt. No. 1-7) at 2)

On May 22, 2019, in connection with settlement negotiations with defense counsel, Plaintiffs' counsel mentioned that there was evidence that the U.S.S. Constellation was outfitted with Cleaver-Brooks "equipment." (May 22, 2019 email (Dkt. No. 1-7) at 2) Plaintiffs' counsel stated that

> [Mr.] Brown testified that he worked at the Brooklyn Navy Yard on board the USS Constellation in or about 1960/61-1962. He claimed exposure from various types of equipment on board the ship. Ship records demonstrate the presence of Cleaver Brooks equipment on board. I have just asked our Naval records librarian

3

to provide me with the documents referencing Cleaver Brooks and will share them with you when I receive his reply.

(Id.) The next day, Plaintiffs' counsel produced "ship records, demonstrating the existence of a Cleaver-Brooks brand distilling plant onboard the USS Constellation." (Def. Br. (Dkt. No. 17) at 6) The records do not mention Cleaver-Brooks "boilers." (Notice of Removal (Dkt. No. 2) ¶ 15)

On June 21, 2019, Cleaver-Brooks removed this action pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(l). (Notice of Removal (Dkt. No. 2)) Cleaver-Brooks' removal papers include affidavits stating that Clever-Brooks' "products were designed and manufactured pursuant to precise contracts and specifications approved by the Navy." (Id. ¶ 19) Cleaver-Brooks argues that its removal is timely because it occurred within 30 days of the parties' May 22 and 23, 2019 correspondence, in which Plaintiffs disclose that the U.S.S. Constellation was outfitted with a Cleaver-Brooks distilling plant. (Id. ¶¶ 14-16)

Plaintiffs have moved to remand, arguing that Cleaver-Brooks' removal is untimely under 28 U.S.C. § 1446(b)(3), because Cleaver-Brooks removed the case more than 30 days after Plaintiffs served their October 2017 interrogatory responses. (Dkt. Nos. 11, 12)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Federal Officer Removal

"The federal officer removal statute allows suits against federal officers to be removed despite the nonfederal cast of the complaint. . . ." Cohen v. Postal Holdings, LLC, 873 F.3d 394, 397 n.3 (2d Cir. 2017). "The federal officer removal statute provides that any action

to provide me with the documents referencing Cleaver Brooks and will share them with you when I receive his reply.

(Id.) The next day, Plaintiffs' counsel produced "ship records, demonstrating the existence of a Cleaver-Brooks brand distilling plant onboard the USS Constellation." (Def. Br. (Dkt. No. 17) at 6) The records do not mention Cleaver-Brooks "boilers." (Notice of Removal (Dkt. No. 2) ¶ 15)

On June 21, 2019, Cleaver-Brooks removed this action pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(l). (Notice of Removal (Dkt. No. 2)) Cleaver-Brooks' removal papers include affidavits stating that Clever-Brooks' "products were designed and manufactured pursuant to precise contracts and specifications approved by the Navy." (Id. ¶ 19) Cleaver-Brooks argues that its removal is timely because it occurred within 30 days of the parties' May 22 and 23, 2019 correspondence, in which Plaintiffs disclose that the U.S.S. Constellation was outfitted with a Cleaver-Brooks distilling plant. (Id. ¶¶ 14-16)

Plaintiffs have moved to remand, arguing that Cleaver-Brooks' removal is untimely under 28 U.S.C. § 1446(b)(3), because Cleaver-Brooks removed the case more than 30 days after Plaintiffs served their October 2017 interrogatory responses. (Dkt. Nos. 11, 12)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Federal Officer Removal

"The federal officer removal statute allows suits against federal officers to be removed despite the nonfederal cast of the complaint. . . ." Cohen v. Postal Holdings, LLC, 873 F.3d 394, 397 n.3 (2d Cir. 2017). "The federal officer removal statute provides that any action

brought against an 'officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office,' may be removed to federal court by the defendant." Cuomo v. Crane Co., 771 F.3d 113, 115 (2d Cir. 2014) (quoting 28 U.S.C. § 1442(a)(1)). "To invoke the statute, a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable federal defense.'" Id. (quoting Isaacson v. Dow Chem. Co., 517 F.3d 129, 135 (2d Cir. 2008)). "While the burden of establishing federal jurisdiction lies with the party seeking removal, the Supreme Court has held that federal officer removal should not be constrained by a narrow, grudging interpretation." Donohue v. CBS Corp., No. 17 Civ. 7232 (WHP), 2017 WL 5713222, at *2 (S.D.N.Y. Nov. 27, 2017) (internal quotation marks omitted) (citing Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1991)); In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 488 F.3d 112, 124, 131 (2d Cir. 2007) (noting that "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability," but also providing that the "federal officer removal statute is not to be construed grudgingly").

### B. Timeliness of Removal

"Under 28 U.S.C. § 1446, removal is timely if it occurs within one of two 30-day periods." Ramirez v. Oscar De La Renta, LLC, No. 16 Civ. 7855 (RA), 2017 WL 2062960, at *2 (S.D.N.Y. May 12, 2017). First, an action must be removed "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). Second, "if the case stated by the initial pleading is not removable," removal must occur "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from

which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

"A case is removable when the initial pleading" or other paper "'enables the defendant to 'intelligently ascertain' removability from the face of [the document], so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a)." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 205-06 (2d Cir. 2001) (internal alterations and quotation marks omitted). "A pleading" or other paper "enables a defendant to intelligently ascertain removability when it provides the necessary facts to support the removal petition." Id. at 206 (internal alterations and quotation marks omitted). Although defendants must "'apply a reasonable amount of intelligence in ascertaining removability,'" they "have no independent duty to investigate whether a case is removable." Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 143 (2d Cir. 2014) (quoting Whitaker, 261 F.3d at 206).

"[T]he 30-day deadline to file removal is 'rigorously' enforced," and a "defendant's failure to file within this . . . period requires remand back to state court." Nguyen v. Am. Express Co., 282 F. Supp. 3d 677, 680 (S.D.N.Y. 2017) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1046 (2d Cir. 1991)). "[T]he burden is on the removing party to show that . . . removal was timely and proper." Winter v. Novartis Pharm. Corp., 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014).

## II. APPLICATION

Plaintiffs do not dispute that the elements of federal officer removal are satisfied, nor do they contend that the Complaint or Amended Complaint triggered the 30-day removal period, given that these pleadings contain no information about Mr. Brown's work history, the circumstances under which he was exposed to asbestos, the types of products to which he was

6

exposed, or the manufacturers of those products. (Cmplt. (Dkt. No. 2-1); Am. Cmplt. (Dkt. No. 2-2))

Plaintiffs argue, however, that the 30-day removal period was triggered when Plaintiffs served their interrogatory responses in October 2017. The 30-day removal period may be triggered by "'a wide array of documents,'" including "'discovery documents.'" Corner House Condo. Ass'n v. State Farm Fire & Cas. Co., No. 3:16 Civ. 1515 (JAM), 2016 WL 7493955, at *2 (D. Conn. Dec. 30, 2016) (quoting 14C C. Wright & A. Miller, Federal Practice and Procedure § 3731 (4th ed.)); see Caribbean Fertilizers Grp., Ltd. v. Fersan Fertilizantes Santo Domingo, C. por A., No. 02 Civ. 9919 (DC), 2003 WL 21961124, at *2 (S.D.N.Y. Aug. 18, 2003) ("responses to interrogatories constitute 'other papers' for purposes of removal") (citing Viens v. Wal-Mart Stores, Inc., No. 96 Civ. 2602 (AHN), 1997 WL 114763, *2 (D. Conn. March 4, 1997)). Accordingly, the dispositive question here is whether the case's removability was ascertainable from Plaintiffs' interrogatory responses.

As discussed above, Plaintiffs' October 2017 interrogatory responses disclose that Mr. Brown spent more than a year working at the Brooklyn Navy Yard between 1959 and 1962, including six months aboard the U.S.S. Constellation and other ships docked there. (Pltf. Interrog. Resp. (Dkt. No. 12-3) at 12, 28) Mr. Brown asserted that, during this time, he was exposed to "asbestos insulation on," among other things, "distilling plants."[3] (Id. at 12)

---

[3] As is also discussed above, in the interrogatory responses, Plaintiffs state that Mr. Brown was exposed to asbestos used to insulate Cleaver-Brooks boilers. It is unclear from the responses whether Mr. Brown's exposure to Cleaver-Brooks boilers took place on the U.S.S. Constellation or at "numerous residential and commercial sites throughout New York City." (Pltf. Interrog. Resp. (Dkt. No. 12-3) at 12-14) According to Cleaver-Brooks, the U.S.S. Constellation was not equipped with Cleaver-Brooks boilers. Accordingly, the company assumed that Mr. Brown's exposure to Cleaver-Brooks boilers must have occurred at residential and commercial sites. (Def. Br. (Dkt. No. 17) at 15-16) Exposure to asbestos insulation on boilers installed at residential and commercial sites would not, of course, "give rise to a federal defense" that would

Accordingly, in the interrogatory responses, Plaintiffs identified a specific ship on which Mr. Brown worked – the U.S.S. Constellation – when he worked on that ship – in about 1960 – and the types of asbestos-containing products to which he was exposed, including a distilling plant, which is a product that was manufactured by Cleaver-Brooks. Although the interrogatory responses do not identify Cleaver-Brooks as the manufacturer of the distilling plant, courts have repeatedly concluded that such detail is not necessary to trigger the 30-day removal clock. See Levy v. A. O. Smith Water Prod. Co., No. 12 Civ. 5152, 2012 WL 2878140, at *3 (S.D.N.Y. July 13, 2012) (interrogatory responses triggered 30-day removal period where they "identified . . . specific ships" on which plaintiff worked, the "time period" he worked on them, and "the type of [asbestos-containing] products" to which plaintiff was exposed, including "valves" – even though the interrogatory responses contained no "allegation that [plaintiff] worked specifically with [defendant] Crane['s] valves"); Viscosi v. Am. Optical Corp., No. 3:07 Civ. 1559 (SRU), 2008 WL 4426884, at *7 (D. Conn. Sept. 29, 2008) (removal period was triggered when plaintiff disclosed that he had "worked aboard the U.S.S. Ingraham from 1949 to 1952, in the employ of the U.S. Navy, as a boiler tender and fireman" – even though that disclosure did not "specifically identify[] [the] Buffalo Pumps product that was present on the USS Ingraham"); Pantalone v. Aurora Pump Co., 576 F. Supp. 2d 325, 333 (D. Conn. 2008) (complaint alleged that plaintiff "was exposed to various asbestos containing products while in the U.S. Navy . . . during the years 1951-1956"; removal period was triggered by discovery responses disclosing

---

make the case removable. (Id. at 16) Plaintiffs argue, however, that the case nonetheless became removable in October 2017, because the interrogatory responses disclose that Mr. Brown was exposed to asbestos used to insulate a distilling plant onboard the U.S.S. Constellation. (Pltf. Br. (Dkt. No. 12) at 6-7)

8

the two ships that plaintiff had worked on, even though plaintiff did not identify Buffalo Pumps products as a source of asbestos exposure).[4]

Cleaver-Brooks argues, however, that it could not determine – based on Plaintiffs' interrogatory responses – whether Plaintiffs were asserting liability based on Mr. Brown's exposure to Cleaver-Brooks products at the Brooklyn Navy Yard or during Mr. Brown's employment at residential and commercial sites. (Def. Br. (Dkt. No. 17) at 15-16) In this regard, Cleaver-Brooks has submitted evidence that the products it supplied to the U.S. Navy "were designed and manufactured pursuant to precise contracts and specifications approved by the Navy." (Notice of Removal (Dkt. No. 2) ¶ 19) (citing affidavits of Tom McCaffrey, David P. Sargent, and Samuel A. Forman). Cleaver-Brooks appears to contend – without citing evidence – that it manufactured asbestos-containing products during the relevant period that were not

---

[4] See also Speedy v. 3M Co., No. 15 Civ. 391, 2015 WL 2265410, at *3 (S.D. Ill. May 12, 2015) (removal untimely where "interrogatory answers . . . identif[ied] specific worksites and asbestos-containing products from which [defendant] Solar Turbines Incorporated could have concluded that plaintiffs' allegations arose while it was acting under the direction of the United States"); Scearce v. 3M Co., No. 12 Civ. 6676, 2013 WL 2156060, at *1, *5 (D.N.J. May 16, 2013) (removal untimely where plaintiff had disclosed that "[f]rom approximately 1983 to 2004, [plaintiff] was exposed to asbestos-containing products while conducting electric repair work at various Air Force base sites, including McGuire Air Force Base in New Jersey"; removal period was triggered even though defendant Raytheon (1) "developed a wide range of products and could not have determined the product upon which Plaintiffs' claims were based," and (2) "very well could have provided various products to the Air Force, some of which would not have justified federal officer removal"); Dilks v. 4520 Corp., No. 12 Civ. 2758, 2012 WL 6625867, at *4 (D. Md. Dec. 18, 2012) (case became removable when plaintiff disclosed that asbestos exposure occurred when "performing duties and living aboard the USS Piper and the USS Von Steuben between 1963 and 1968" – even though plaintiff "did not describe any of the products at issue") (internal quotation marks omitted); cf. In re Asbestos Prod. Liab. Litig. (No. VI), 770 F. Supp. 2d 736, 740 (E.D. Pa. 2011) (removal period not triggered by complaint that alleged asbestos exposure from work on unspecified naval ships and non-naval job sites, where complaint did not mention "turbines" as a source of asbestos exposure at naval shipyard); Contois v. Able Indus. Inc., 523 F. Supp. 2d 155, 158 (D. Conn. 2007) (defendant's removal was timely where plaintiff had previously disclosed the name of a ship that he had worked on but "made no mention of [the types of] specific asbestos-containing product[s] with which [plaintiff] came in contact").

subject to these specifications and which could be found at residential and commercial sites in New York City. Assuming arguendo that this is true, Plaintiffs' failure to state in the interrogatory responses that the U.S.S. Constellation was outfitted with a Cleaver-Brooks distilling plant does not justify Cleaver-Brooks' delay in removing this case. See, e.g., Scearce, 2013 WL 2156060, at *5 (removal period was triggered despite defendant's argument that it "could not have determined the product upon which Plaintiffs' claims were based," and the defendant "very well could have provided various products to the Air Force, some of which would not have justified federal officer removal"); Pantalone, 576 F. Supp. 2d at 333 (removal period was triggered even though plaintiff did not specify whether exposure to defendant's asbestos-containing products occurred "during his Navy service" or "during his post-Navy career"); Viscosi, 2008 WL 4426884, at *7 (removal period was triggered even though defendant "sold numerous products that contained asbestos to both military and civilian purchasers," and even though "sales to a civilian purchaser" would not support "a colorable military contractor defense"). As several courts have concluded, the 30-day removal period is triggered when removal becomes "ascertainable," not when it becomes "uncontestable." See Scearce, 2013 WL 2156060, at *5; Addison v. CBS Corp., No. CV 13-397-GPM, 2013 WL 6169155, at *3 (S.D. Ill. Nov. 25, 2013) (same); Mims v. 84 Lumber Co., 2013 WL 4775306, at *7 (D. Del. Sept. 6, 2013), report and recommendation adopted sub nom. 2013 WL 6571816 (D. Del. Dec. 12, 2013) (same); Dilks, 2012 WL 6625867, at *4 (same).

Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137 (2d Cir. 2014) – cited by Cleaver-Brooks (Def. Br. (Dkt. No. 17) at 13) – announces no different rule. In stating in Cutrone that "defendants have no independent duty to investigate whether a case is removable," see Cutrone, 749 F.3d at 143, the Second Circuit – contrary to Cleaver-Brooks'

argument (Def. Br. (Dkt. No. 17) at 18) – was merely reiterating well established law. For example, in 2001, in Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 205-06 (2d Cir. 2001), the Second Circuit made clear that a defendant need not "look beyond the initial pleading" to determine whether a case is removable. Whitaker, 261 F.3d at 205-06.[5] Acknowledging this rule, courts have nevertheless concluded that – where (1) a plaintiff sues a company for injuries resulting from asbestos exposure; (2) plaintiff identifies the types of asbestos-containing products to which plaintiff was exposed; (3) the company manufactured those products; (4) plaintiff discloses the time period for and location of the exposure; and (5) plaintiff's claims implicate a federal officer defense – no independent investigation is necessary to ascertain the case's removability and to articulate a short and plain statement of the grounds for removal as required by 28 U.S.C. § 1446(a). See, e.g., Levy, 2012 WL 2878140, at * 3; Viscosi, 2008 WL 54426884, at *7; Pantalone, 576 F. Supp. 2d at 333.

Here – after Plaintiffs provided their interrogatory responses – an independent investigation was not necessary to ascertain removability. Cleaver-Brooks was on notice that Mr. Brown had worked as a sheet metal worker on the U.S.S. Constellation at the Brooklyn Navy Yard during the 1959 to 1962 time period, and that as a result of his work, he had been exposed to asbestos insulation in and around "boilers, pumps, valves, pump motors, generators,

---

[5] The other pre-Cutrone cases criticized by Cleaver-Brooks (Def. Br. (Dkt. No. 17) at 18-19) recognize and apply this same principle. See Levy, 2012 WL 2878140, at *1 (S.D.N.Y. July 13, 2012) (noting that defendants need not "'look beyond the . . . pleading for facts giving rise to removability'") (quoting Moltner v. Starbucks Coffee Co., 624 F.3d 34, 37 (2d Cir. 2010)); Viscosi, 2008 WL 4426884, at *6 ("In assessing whether a document starts the clock on a defendant's time for removal, it is important that the triggering document contain the information that gives rise to removal within its four corners. If the defendant cannot be sure that the case is removable, the document does not trigger removability, and courts have held that it is irrelevant that the defendant may have an independent knowledge of facts justifying removal."); Pantalone, 576 F. Supp. 2d at 332 ("Although a defendant must 'apply a reasonable amount of intelligence in ascertaining removability,' it need not "look beyond the initial pleading for facts giving rise to removability.") (quoting Whitaker, 261 F.3d at 205-06).

pipes, pipe covering, turbines, compressors, distilling plants, refrigerating units and blowers." (Pltf. Interrog. Resp. (Dkt. No. 12-3) at 12) As discussed above, numerous courts have found that similar allegations are sufficient to trigger the 30-day removal clock. See, e.g., Levy, 2012 WL 2878140, at * 3; Viscosi, 2008 WL 54426884, at *7; Pantalone, 576 F. Supp. 2d at 333.

"[W]hile investigation into the plaintiff is certainly not required, . . . a defendant [may not] ignore facts that are readily known to it." Dugdale v. Nationwide Mut. Fire Ins. Co., No. 4:05 Civ. 138, 2006 WL 335628, at *6 (E.D. Va. Feb. 14, 2006); see also Mai Dang v. Target Corp., No. 14 Civ. 2215, 2014 WL 6705375, at *4 (D. Md. Nov. 26, 2014) (citing Dugdale); Gregorian v. New York Life Ins. Co., No. 07 Civ. 5210 (RJD) (MDG), 2009 WL 179217, at *3 (E.D.N.Y. Jan. 26, 2009) ("[D]efendants may not turn a blind eye to grounds for removal that can be intelligently ascertained.") (internal alterations and quotation marks omitted); Dilks, 2012 WL 6625867, at *4 n.12 ("an asbestos plaintiff is not expected to know and disclose minute details of exposure that occurred decades earlier").

Cleaver-Brooks could have ascertained that this case was removable based on the information Plaintiffs supplied in their October 2017 interrogatory responses. Because Cleaver-Brooks removed the case more than 30 days after the interrogatory responses were served, the removal was untimely under 28 U.S.C. § 1446(b)(3), and this case must be remanded.[6]

---

[6] Plaintiffs have submitted evidence suggesting that, in a prior litigation, a Cleaver-Brooks distilling plant installed on the U.S.S. Constellation was at issue. In that case, Cleaver-Brooks acknowledged the presence of that equipment on that ship. (Pltf. Br. (Dkt. No. 12) at 8-9) The Court has not relied on this evidence in resolving Plaintiffs' remand motion. "To determine whether defendants have notice of grounds for removal, courts look to information within the four corners of the document that may trigger removal" – not to evidence pertaining to the removing party's subjective knowledge. Viscosi, 2008 WL 4426884, at *6; see also Suttlehan v. MidFirst Bank, 205 F. Supp. 3d 366, 369 (S.D.N.Y. 2016) ("[M]any courts have determined that documents emanating from without the lawsuit do not count as an 'other paper' within the meaning of § 1446(b)(3).").

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion to remand (Dkt. No. 11) is granted. The Clerk of Court is directed to close this case and return the matter to the Clerk of Supreme Court for the State of New York, New York County. Any other pending motions are moot.

Dated: New York, New York
       March 9, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge